* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or non-joinder of the parties.
3. At all times in question, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. All Industrial Commission forms filed in this matter were made part of the Record.
5. Plaintiff is Richard E. Towe and was over 18 years of age at the time of the compensable accident on May 1, 2002.
6. Plaintiff was employed by Curbside Management on May 1, 2002 when he sustained a compensable low back injury. The employee/employer relationship existed between plaintiff and defendant Curbside Management at the time of injury on May 1, 2002.
7. Defendant Curbside Management accepted this claim as compensable pursuant to a Form 60 filed on June 3, 2002. Plaintiff received indemnity benefits from May 1, 2002 through September 25, 2003.
8. At the time of the May 1, 2002 injury, Curbside Management had workers' compensation coverage through Legion Insurance and their claims were administered by CompFirst, LLC.
9. Legion is now bankrupt and the May 1, 2002 claim of injury has been transferred to the NCIGA for further handling.
10. Plaintiff's average weekly wage in connection with the May 1, 2002 injury is $430.41, yielding a compensation rate of $286.95.
11. Plaintiff was incarcerated in the Buncombe County Jail from September 20, 2003 through December 18, 2003.
12. Plaintiff received indemnity benefits from the NCIGA through September 25, 2003.
13. On or about February 2, 2004, Plaintiff forwarded a Form 28U to Defendants-Curbside Management/NCIGA indicating that he had been employed by WNC Pallet on September 18, 2003 and September 19, 2003, but did not execute the Employee's Release of Employment Information.
14. Plaintiff provided an Amended Form 28U on or about February 18, 2004 indicating that he had been employed by WNC Pallet on September 18, 2003 and September 19, 2003 with a properly executed Employee's Release of Employment Information, authorizing release of records from WNC Pallet.
15. Plaintiff seeks ongoing indemnity benefits from December 19, 2003 and continuing. On September 18, 2003 and September 19, 2003, plaintiff was employed by WNC Pallet. The employee/employer relationship existed between plaintiff and defendant WNC Pallet on September 18, 2003 and September 19, 2003.
16. On September 18, 2003 and September 19, 2003, WNC Pallet's workers' compensation program was administered by NC Forestry Mutual Insurance.
17. Defendant/Employer WNC Pallet Forest Products Co., Inc. is denying that the employee suffered a compensable injury at any time during the employee's employment with WNC Pallet.
 * * * * * * * * * * * RULINGS ON EVIDENTIARY MATTERS
All objections raised during the depositions of Dr. Ralph Loomis, M.D. have been ruled upon in accordance with applicable law and the Rules of Evidence.
Defendants' March 10, 2005 objection to Plaintiff's request dated March 7, 2005 to have Dr. Loomis' medical records dated January 17, 2005 be admitted into evidence is hereby sustained.
 * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff had been employed by Curbside Management (hereinafter Curbside) for 14 months on May 1, 2002 when he sustained injury to his back. He was responsible for driving recycling trucks and sorting through recycling bins. On May 1, 2002, when he was sorting through recycling bins, he twisted and pulled some material, and then felt pain in his lumbar region. The claim was accepted by Legion Insurance Company (now insolvent and being handled by the NCIGA) via a Form 60 on June 3, 2002.
2. Plaintiff received medical treatment from Dr. Loomis with Mountain Neurological Associates, P.A., in connection with the May 2002 injury. Plaintiff initially underwent conservative treatment, including physical therapy and a nerve root block. Ultimately, plaintiff underwent an L4-L5 microlumbar discectomy performed by Dr. Loomis on February 6, 2003. Plaintiff underwent a functional capacity evaluation at Dr. Loomis' request on July 24, 2003. Plaintiff had a normal gait and normal tandem walking upon examination on July 25, 2003.
3. Based on that functional capacity evaluation, Dr. Loomis released plaintiff to return to work with restrictions on September 1, 2003. Plaintiff's restrictions were lifting 40 pounds frequently and 50 pounds occasionally. Plaintiff was not able to return to work at Curbside because it did not have any positions available within plaintiff's restrictions. Plaintiff located employment with WNC Pallet Forestry Products Co. (hereinafter WNC) and he started work with WNC on September 18, 2003.
4. While at WNC, plaintiff was pulling lumber off a conveyor belt. He had assistance so that there were two people pulling the lumber. Plaintiff worked an 8-hour shift on September 18 and 19, 2003 and he experienced pain after both shifts. On the third day after starting with WNC, plaintiff was arrested. He was incarcerated for 89 days.
5. Plaintiff was released from jail on December 18, 2003, and sought treatment from Dr. Loomis on December 19, 2003. At that time, plaintiff advised Dr. Loomis that he had returned to work for 2 days loading and unloading green lumber onto a pallet with another person in September 2003. Plaintiff was off-loading the lumber from a conveyor belt that had gone through a planer. He started to have left anterolateral thigh pain down to the level of the knee. On that date, plaintiff had a limp involving the left leg, which was different than the findings in July 2003. Dr. Loomis concluded that plaintiff had re-injured himself and assigned work restrictions, including no heavy lifting, bending, reaching, stooping, crawling, working on ladders and no lifting greater than three pounds. Dr. Loomis also recommended that plaintiff undergo additional physical therapy because of the new muscular injury plaintiff sustained in September 2003.
6. An MRI dated January 4, 2004 showed a L4-5 small lateral protrusion characterized as being unchanged from June 2003. This MRI also noted a L3-4 protrusion, but indicated that it was smaller than the protrusion observed in June 2003. Dr. Loomis diagnosed plaintiff with a musculoskeletal trauma to the spine as a result of the work activities performed in September 2003. Plaintiff's symptoms were worse as a result of the muscle trauma caused by the work in September 2003.
7. In February 2004, Dr. Loomis recommended that plaintiff undergo an additional nerve root block and an evaluation for a second opinion regarding possible additional surgery. These recommendations were made based on the injury plaintiff sustained as a result of his work activities in September 2003. Dr. Loomis also wrote plaintiff out of work on March 15, 2004, and continued plaintiff out of work on April 21, 2004. He testified that plaintiff's inability to work was directly related to the aggravation of plaintiff's pre-existing back problem caused by the injury in September 2003.
8. Dr. Loomis stated that plaintiff could not return to his previous line of work, but he was not prepared to provide any more specific work restrictions at the time of his deposition. He felt it was likely that plaintiff would experience limitations in his physical capacity to engage in work activities and he opined that plaintiff would sustain future expenses in following recommended treatment for his disc injury.
9. Dr. Loomis testified that plaintiff sustained a new injury in September 2003 and he opined to a reasonable degree of medical certainty that plaintiff's work activities in September 2003 aggravated plaintiff's pre-existing injury. Moreover, Dr. Loomis opined that plaintiff had sustained a muscular-type strain injury as a result of his work on September 18 and 19, 2003, which Dr. Loomis did not think would be a permanent injury.
10. In fact, the restrictions Dr. Loomis imposed on April 20, 2004 were as a result of the disc injury and the post-operative changes and the scars on the left at L4-L5 as shown on the MRI. These restrictions do not relate to the soft tissue injury of September 18 and 19, 2003.
11. Dr. Loomis was the only medical expert from whom testimony was taken in this matter. He was tendered as an expert in spinal disorders, including soft tissue structures and neurosurgery. In addition, Dr. Loomis is plaintiff's treating physician and as such his testimony is given weight as competent and credible. Further, he has indicated that he has no reason to question the accuracy of the information that plaintiff provided to him regarding the events of September 2003.
12. Employment and wage records from WNC show that plaintiff completed a job application for work with WNC and he advised WNC that he was available to perform any type of work that they had available.
13. At the pay period ending September 21, 2003, WNC paid plaintiff $120.00. This was based on the fact that plaintiff had worked two 8-hour shifts and was paid at the rate of $7.50 per hour.
14. Plaintiff testified that he had worked for 2 days lifting pallets at WNC with a helper and hurt his back. While plaintiff also testified that he did not think he had suffered an injury at work at WNC, this testimony is contradicted by the statements that plaintiff made to his nurse case manager with Genex and to Dr. Loomis. The undersigned finds that plaintiff as a lay person is not knowledgeable in the technicalities of the law and would not necessarily know that he had sustained a specific traumatic incident. This type of injury is not defined in the same way as a lay person would consider "injury" to be defined. The greater weight of the evidence shows that plaintiff experienced a specific traumatic incident on September 18 and 19, 2003 while employed by WNC which resulted in his inability to earn the same or greater wages as he was earning at the time of his specific traumatic incident for the period following his release from jail from December 19 to April 20, 2004 when the restrictions preventing him from working and earning the wages earned prior to May 2002 are no longer attributable to the soft tissue injury but to the disc injury of May 2002 and the subsequent surgery and resultant scar tissue.
 * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Following plaintiff's injury by accident of May 1, 2002 and pursuant to a Form 60, plaintiff received workers' compensation benefits from Curbside through September 25, 2003. Since plaintiff had been released to return to work on September 1, 2003 and, in fact, began employment on September 18, 2003 with WNC, plaintiff is not entitled to a presumption of disability. Plaintiff failed to meet his burden of showing continued disability as a result of the initial May 1, 2002 injury. SeeSims v. Charmes/Arby's Roast Beef, 142 N.C. App. 154,542 S.E.2d 277, disc. rev. denied, 353 N.C. 729, 550 S.E.2d 782 (2001); N.C. Gen. Stat. § 97-2(9).
2. Plaintiff sustained a new injury by accident in that he sustained a specific traumatic incident while employed by WNC on September 18 and 19, 2003 while off-loading lumbar and lifting pallets. The period of time during which plaintiff worked for WNC, with his report of pain with symptoms differing from his initial May injury following both 8-hour shifts, establishes a cognizable time period during which plaintiff sustained an injury. This injury was a soft tissue, muscular-type injury for which plaintiff is entitled to temporary total disability from WNC from December 19, 2003 to April 20, 2004. Further, since plaintiff's disability beginning on April 20, 2004 is attributable to the disc injury of May 2002 while employed by Curbside, plaintiff is entitled to temporary total disability to be paid by Curbside at the weekly compensation rate of $286.95 from this date and continuing until plaintiff returns to work or further order of the Commission. See N.C. Gen. Stat. § 97-2(6);Crowder v. Preston Trucking Co., 161 N.C. App. 181,588 S.E.2d 86 (2003), disc. rev. denied, 358 N.C. 542, 599 S.E.2d 41
(2004); Fish v. Steelcase, Inc., 116 N.C. App. 703, 709,449 S.E.2d 233, 237 (1994).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved herein, WNC shall pay to plaintiff temporary total disability benefits, based upon an average weekly wage to be agreed upon by the parties beginning December 19, 2003 to April 20, 2004. Such amount which has already accrued shall be paid in a lump sum.
2. Subject to the attorney's fee approved herein, Curbside shall pay to plaintiff temporary total disability benefits at the weekly compensation rate of $286.95 from April 20, 2004 and continuing until plaintiff returns to work or until further order by the Industrial Commission. Such amount which has already accrued shall be paid in a lump sum.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due to plaintiff under paragraph #1 and # 2 of this award is approved for plaintiff's counsel and shall be paid by Curbside and #2 as follows: twenty-five percent (25%) of the lump sum due plaintiff under paragraphs #1 and # 2 of this award which has accrued to date shall be paid directly to plaintiff's counsel. Plaintiff's counsel shall receive every fourth check of all future compensation to be paid by Curbside.
4. Each defendant shall pay the medical expenses attributable to the injury for which each is responsible which has been incurred or will be incurred by plaintiff as a result of his compensable injuries by accident so long as it tends to affect a cure or give relief or lessen his disability.
5. Defendants shall equally bear the costs of this action.
This the 15th day of December 2005.
 S/ _______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/ _______________________ BERNADINE S. BALLANCE COMMISSIONER
 S/ _______________________ LAURA K. MAVRETIC COMMISSIONER